**Dennis WHEELER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–96–382 CR.**

Court of Appeals of Texas, Beaumont.

Submitted on March 27, 2002.

Delivered June 5, 2002.

Douglas M. Barlow, Beaumont, for appellant.

Lisa Tanner, Dist. Atty. Pro Tem, Hardin County, Asst. Atty. Gen., Austin, for state.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION ON REMAND

RONALD L. WALKER, Chief Justice.

This cause was remanded to us to consider the remainder of the appellate issues. *See Wheeler v. State,* 67 S.W.3d 879, 880 (Tex.Crim.App.2002). Both parties were permitted to file new or amended briefs but neither chose to do so. We therefore look to the briefs filed with the cause on original submission. Recall that appellant was convicted by a jury of aggravated sexual assault on a child, S.E. The trial court assessed punishment at life in the Institutional Division of the Texas Department of Criminal Justice.

Issue two complains of trial court error in permitting hearsay testimony of a Children's Protective Services (CPS) investigator regarding an extraneous act of molestation by appellant. In reversing this Court on appellant's first point of error, the Court of Criminal Appeals de-

scribed the CPS investigator, Wanda Brumley, as "a species of expert witness." *Wheeler,* 67 S.W.3d at 883 (footnote omitted). The designation of Ms. Brumley as "a species of expert witness" permitted the Court to find no error in the State's cross-examination of Ms. Brumley with regard to her knowledge of a similar extraneous allegation of sexual assault by appellant on his niece several years prior to the instant offense. *Id.* at 884. The rationale for this holding was stated as follows:

> However, the defense presented Ms. Brumley as a species of expert witness, [footnote 5 omitted] one who had conducted a CPS investigation and "did not find any risk of abuse or neglect in the home." Therefore, the State was entitled to cross-examine Ms. Brumley as it did for two independent but related reasons. First, the opposing party is always entitled to cross-examine an expert witness concerning the facts and data upon which that expert relied in forming her conclusion or opinion. [footnote 6 cites to TEX.R. EVID. 705(a) ] Once Ms. Brumley testified to her "determination," the State was entitled to inquire into the circumstances of that investigation, the mode under which she conducted her inquiry, the people she interviewed, and the materials upon which she relied. [footnote 7 omitted, but will be discussed below] **The State was also entitled to question Ms. Brumley about information of which she was aware, but upon which she did *not* rely.**

*Id.* at 883 (emphasis added except for the word "not" which was emphasized in the original).

TEX.R. EVID. 705(a) reads as follows:

> **(a) Disclosure of Facts or Data.** The expert may testify in terms of opinion or inference and give the expert's reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data.

Footnote 7, referred to in the above quote from *Wheeler,* reads:

> *See, e.g., Nenno v. State,* 970 S.W.2d 549, 564 (Tex.Crim.App.1998) (concluding that State was entitled to cross-examine capital murder defendant's expert witness concerning contents of report made by expert's colleague who had interviewed defendant about crime **when that witness relied upon report in forming his own opinion**).

*Wheeler,* 67 S.W.3d at 883 n. 7 (emphasis added).

We must admit to some confusion in the state of the law with regard to the scope of cross-examining a testifying expert witness. The Court characterized the reasons the State was entitled to cross-examine Ms. Brumley as "independent but related." *Id.* at 883. The first reason given cited TEX.R. EVID. 705(a). The second reason seemed to be taken from the same Rule 705(a), but with the additional "wrinkle" that the expert could be questioned about facts or data upon which she "did not" rely. There was no case or statutory authority for the second reason given by the Court. *See Wheeler,* 67 S.W.3d at 883.

The rules of evidence, and the generally recognized rule as noted in the *Nenno* quote above, indicate that a testifying expert may be cross-examined on any facts or data upon which the expert **based his or her opinion.** *See* TEX.R. EVID. 703, 705(a), (b), (c), (d); *Nenno,* 970 S.W.2d at 564. Indeed, in *Nenno,* we find the following observation:

In a very similar situation, a court of appeals has held that the State could impeach a defense expert with out-of-court statements contained in another doctor's report where the defense expert **had relied** upon a summary of the report in formulating his opinions. *Moranza v. State*, 913 S.W.2d 718, 727–728 (Tex.App.-Waco 1995, pet. ref'd). In the present case, Dr. Geffner claimed to have relied upon the complained of interview.

*Nenno*, 970 S.W.2d at 564 (emphasis added). Nevertheless, in *Wheeler*, the Court held that an expert may be cross-examined on facts and data of which she is aware, "but upon which she did *not* rely." *Wheeler*, 67 S.W.3d at 883.

Our confusion is further compounded in that the extraneous offense "fact" used by the State in the instant case in its cross-examination of Ms. Brumley was clearly recognized to be hearsay by the *Wheeler* Court, and, apparently because the "fact" was hearsay, had not been used by Ms. Brumley in making the determination that appellant posed no risk to his children. *See id.* at 884. Indeed, the Court of Criminal Appeals has held in very similar circumstances that where a party attempts to question an expert, ostensibly on Rule 705(a) grounds, about facts or data **not** relied on by the expert in formulating his ultimate opinion, it is improper. *See Clark v. State*, 881 S.W.2d 682, 694 n. 10 (Tex. Crim.App.1994) ("In a supplemental brief, appellant also claims that the letter and report was admissible pursuant to Tex. R.Crim.Evid. 705(a) as disclosure of the expert's underlying facts or data. However, clearly the letter and report was not in

any way used to form the expert opinion which Dr. Grigson testified to in the instant cause."); *Ramirez v. State*, 815 S.W.2d 636, 651 (Tex.Crim.App.1991) ("Under Rule 705 it would be improper for the inquiring party to disclose the results of certain studies, by asking a leading question, when it has not been established that the specific study was actually done or that the expert relied upon the study in forming his opinion."). *See also Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 546 (5th Cir.1978).

Nevertheless, the *Wheeler* Court has appeared to construe Rule 705, and indirectly Rule 703, to permit an expert to be cross-examined with hearsay facts and data not relied upon by said expert in formulating his or her opinion. We are therefore constrained by *stare decisis* to overrule issue two. The Court's holding in *Wheeler*, although focused solely on the complaint raised by appellant in issue one, is also applicable to the alleged error raised in issue two.[1] The general rule that an expert may be cross-examined on the basis of his or her opinion with the purpose, *inter alia*, of impeachment with out-of-court statements is now applicable to circumstances in which the expert did not rely on said out-of-court statements in formulating his or her ultimate opinion. *See Wheeler*, 67 S.W.3d at 883; *Nenno*, 970 S.W.2d at 564. Issue two is overruled.

■ Issue three reads: "Reversible error occurred when a witness was allowed to testify regarding the credibility of the alleged victim." Consistent with the wording of this issue is the following sentence which appears to be the main thrust of

---

**1.** Issues one and two are essentially companion issues: Issue one complains of trial court error in permitting the State to elicit testimony from Brumley concerning the extraneous offense against appellant's niece in violation of Rules 404(a)(b) and 403 of the Texas Rules

of Evidence; issue two complains that such evidence is inadmissible hearsay. *See Wheeler v. State*, 988 S.W.2d 363, 368 (Tex.App.-Beaumont 1999), *rev'd*, 67 S.W.3d 879 (Tex. Crim.App.2002).

appellant's complaint: "Appellant contends that this evidence [witness's testimony] was offered by the State under the guise of being mere observations by a schoolteacher, but was in fact expert testimony on the credibility of the alleged victim."[2] Yet the record before us indicates that trial counsel objected on the grounds that the question to the witness "would call for a conclusion. That calls for expertise, whether or not a person would make up." It is unclear whether appellant's complaint under issue three is that the witness was being asked to bolster the testimony of the victim, or that the State's question called for a response that the witness was not qualified to answer. We find that appellant's trial objection does not comport with the complaint on appeal that the witness was being asked to bolster the testimony of the victim, S.E., with an opinion that S.E. was not prone to fantasy. He has therefore preserved nothing for review. TEX.R.APP. P. 33.1(a); *Ibarra v. State,* 11 S.W.3d 189, 197 (Tex.Crim.App.1999).

With regard to appellant's trial objection that the witness lacked the expertise to answer the question, appellant seems to shift gears in his appellate brief and finds the witness, the victim's third grade teacher, possessed sufficient "expertise" to answer the question:

A schoolteacher, qualified by testimony that she had had experience as a teacher in observing children who fabricate tales, would likely carry exceptional weight and an aura of reliability which could lead the jury to abdicate its role in determining a child's credibility, just as could the testimony of a police officer.

Again, appellant has failed to preserve error as we find that appellant's trial objection does not comport with what he now argues on appeal. *Id.* Issue three is overruled.

■ Issue four provides: "Reversible error occurred when the trial court allowed the introduction of a hearsay statement regarding appellant's wanting young girls to perform dances in their underwear." The record reflects that the State called the outcry witness, Margo Williams, to testify. As noted in our discussion of the issue above, Ms. Williams was S.E.'s third grade teacher. Prior to the commencement of the trial, the State provided appellant with notice as required under TEX.CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp.2002). The salient paragraph of said notice reads as follows:

On April 24, 1995, [S.E.] asked Margo Williams if she remembered their "McGruff lesson" in which McGruff said that children should tell someone if an adult touches them in a way that makes them feel uncomfortable. When Williams replied that she did, [S.E] stated that someone had touched her in a way that made her feel uncomfortable. She said that she had gone to her friend Taylor's house and it was her father who had touched her. She said that Taylor

---

2. The witness, Margo Williams, was the victim's third grade teacher, and the outcry witness. The portion of Ms. Williams' testimony in question appears as follows:
Q. [State] Was she [the victim] the type of kid that was always seeking attention or anything like that?
A. [Ms. Williams] No, ma'am. Uh-huh.
Q. Was she the type of kid that would make up wild or outlandish tales to impress you or anything like that?

[Trial Counsel]: Your Honor, we are going to object to that. That would call for a conclusion. That calls for expertise, whether or not a person would make up.
[State]: It is just her opinion as a lay person. She is entitled as a school teacher who has seen this child for a whole school year up until this point to give her opinion on that.
THE COURT: The objection is overruled. Carry on.

was dancing in her bedroom and that the defendant touched her in her panty area.

At trial, the direct examination of Ms. Williams by the State included the following portion which is the basis for appellant's fourth issue:

Q. [State] How did it come to pass? What did she [S.E.] tell you in April of 1995?

A. [Ms. Williams] Well, she just told me that she was going over to her little friend's house and that she was feeling funny and uncomfortable there and that that sometimes that they would go in her friend's bedroom and that they would—that they would go in there and her little friend's dad would want them to dance and do some dances and like usually in their underwear, little panties or whatever.

Q. Did she say—let me ask you this: Did she say how recently this had occurred that she was talking to you about—

[Trial Counsel]: Excuse me, Your Honor, may we approach the bench?

At that point, there was a discussion at the bench in which appellant's trial counsel clearly objected that this hearsay extraneous act evidence regarding appellant's alleged request to the girls to dance in their underwear or panties was not included in the State's art. 38.072 notice. The State replied that all that is required in an art. 38.072 notice "is a summary in the statement. We don't have to give him word for word. The statute specifically says we provide a summary. And there is case law." The trial court ultimately overruled appellant's objection.

The prosecutor was correct that there is case law on the point, but not in support of her position. In *Long v. State,* 800 S.W.2d 545 (Tex.Crim.App.1990), the Court set out the proper application of art. 38.072 as follows:

The language of the statute indicates the testimony is only admissible as a statutory exception to the hearsay rule if its procedures are followed. Therefore, in the prosecution of an offense pursuant to those set forth in Art. 38.072, Sec. 1, the provisions of the statute, including the *notice and hearsay requirements,* **are mandatory,** and must be complied with in order for a statement to be admissible over a hearsay objection.

*Long,* 800 S.W.2d at 547 (emphasis added). In the instant case, because any alleged statement from S.E. to Ms. Williams regarding appellant's watching S.E. and appellant's daughter dance in their underwear or panties was not included in the State's art. 38.072 notice, it was error for the trial court to have permitted the jury to hear this hearsay testimony.

■ Nevertheless, even though a mandatory statute was violated, we are constrained to conduct a harm analysis pursuant to TEX.R.APP. P. 44.2(b). *See Dorado v. State,* 843 S.W.2d 37, 38 (Tex.Crim.App. 1992). The admission of inadmissible hearsay is considered nonconstitutional error, and it will be deemed "harmless" if the reviewing court, after examining the record as a whole, is reasonably assured that the error did not influence the jury verdict or had but a slight effect. *See Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *Broderick v. State,* 35 S.W.3d 67, 74 (Tex.App.-Texarkana 2000, pet. ref'd). The error must not be viewed in isolation but in relation to the entire proceedings. *See Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). In light of both guilt/innocence and punishment phase evidence before us, we find appel-

lant's substantial rights were not violated by the trial court's error.

In the State's case in rebuttal, appellant's 15–year–old niece, S.S., indicated that when she was six-years-old, appellant placed his hand insider her swimsuit bottom and touched her "female sexual organ." Later, during the punishment phase of the trial, the State elicited testimony from an eight-year-old witness, K.M., a friend of appellant's daughter, that during a sleep-over at appellant's house, appellant entered the bathroom where K.M. was taking a bath, undressed himself, entered the bathtub with K.M. who was nude herself, and touched and licked K.M.'s vaginal area. K.M. also indicated that when appellant initially entered the bathroom he was carrying either scissors or a knife, and that, following the sexual assault, appellant told K.M. that if she told her family about the incident, he [appellant] would hurt one of her family members. K.M.'s psychotherapist, Sue Echols, also testified at the punishment phase hearing. Ms. Echols corroborated K.M.'s account of her encounter with appellant in the bathroom, with additional details. Ms. Echols testified that K.M. related to her that after appellant completely undressed, he entered the bathtub with K.M., touched her vaginally and on her "breast," laid on top of her, licked her vaginally, asked K.M. to "suck on him," and inserted "something" into K.M.'s vagina after which K.M. observed some blood. Because the jury was presented with other extraneous acts allegedly committed by appellant on separate child-victims, ranging from indecency with a child to aggravated sexual assault of a child, we cannot see how testimony alluding to appellant's making the victim and

his daughter dance in front of him in their panties could have affected the jury's decision adversely to appellant. The hearsay testimony could only have had the slightest influence, if any at all, on the jury's decision in light of the testimony of S.S., K.M., and Sue Echols. Issue four is overruled.

■ Appellant's last issue is presented as follows: "Reversible error occurred when the trial court excluded certain evidence under Rule 412 of the Texas Rules of Criminal Evidence."[3] As required by the terms of Tex.R. Evid. 412(c), (d), the reporter's record pertaining to this issue is filed under seal, as are the briefs filed by appellant and the State on issue five. The gist of the testimony the trial court refused to admit indicated that, following a visit to her psychologist approximately two months prior to commencement of trial, S.E. told her mother that when S.E. was about three or four years old an older stepbrother sexually abused her on several different occasions in ways similar to that alleged in appellant's indictment. The sealed reporter's record also contains the stepbrother's testimony, flatly denying he committed any sexual abuse on S.E. In an apparent attempt at rebuttal, the State elicited testimony from a stepsister of S.E. The stepsister indicated that approximately seven years prior to her present testimony, when the stepsister was eight-years-old, she walked into her brother's bedroom and observed him on his bed with S.E. next to him. S.E. had no pants on. When S.E.'s stepbrother noticed his female sibling at the door, he "kind of like threw [S.E.] underneath him so I couldn't see I guess." S.E.'s stepsister also testified that approximately seven months be-

---

**3.** Although appellant refers in this appellate issue to the Texas Rules of "Criminal" Evidence, the rules of criminal and civil evidence were consolidated as the Texas Rules of Evidence, effective March 1, 1998. At any rate, Rule 412 of the Texas Rules of Evidence is identical to Rule 412 of the Texas Rules of Criminal Evidence, so the nomenclature contained in the briefs is of little consequence in this particular case.

fore the instant trial commenced, she read a "letter" S.E. had written in which S.E. claimed to have been "molested by two people."

Appellant argued to the trial court, and now argues on appeal, that the above-described testimony was admissible before the jury under TEX.R. EVID. 412, and under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Appellant contends said testimony was admissible before the jury because S.E., during her videotaped interview by a child-victim advocate, stated that no one else had ever touched or molested her before appellant had; appellant further argues that S.E.'s allegation of molestation by her stepbrother was false because of his denial that any molestation had ever taken place.

■ A trial court's decision to exclude evidence will be reversed only if it abused its discretion. *Mozon v. State*, 991 S.W.2d 841, 846–47 (Tex.Crim.App.1999); *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim.App.1990) (op. on reh'g). Appellant contends that the testimony of S.E.'s prior "false" accusation against her older step-brother was admissible under Rule 412 as it would have called S.E.'s credibility into question. However, Rule 412 prohibits evidence of specific instances of an alleged sexual assault victim's past sexual behavior unless it is evidence (A) necessary to rebut or explain scientific or medical testimony offered by the State; (B) of past sexual behavior with the accused that is offered by the accused on the issue of consent; (C) that relates to the motive or bias of the alleged victim; (D) that is admissible under Rule 609, which deals with impeachment by evidence of a prior conviction; or (E) that is constitutionally required to be admitted. *See* TEX.R. EVID. 412(b)(2)(A-E). Furthermore, before a trial court may admit Rule 412(b)(2)(A-E) evidence, it must

find that the probative value of said evidence outweighs the danger of unfair prejudice. *See* TEX.R. EVID. 412(b)(3).

In the instant case, we find the record evidence does not support admitting the evidence in question under sub-parts A–D of Rule 412(b)(2). The doctor who examined S.E. following her outcry testified that the results were "normal," and he could not say that S.E. had or had not been sexually abused. The sealed testimony would neither have rebutted nor explained the doctor's testimony. Also, since the sealed testimony did not involve any past sexual behavior with appellant, it was not admissible under Rule 412(b)(2)(B). Furthermore, a close reading of the sealed testimony, from all witnesses, does not reveal a "motive or bias" of any kind for S.E.'s allegation against appellant. There is not a hint of animus with regard to S.E. or any of the other witnesses toward appellant in any of the sealed testimony. And there is no contention that any of the sealed testimony concerns the impeachment of anyone with a prior criminal conviction. That leaves Rule 412(b)(2)(E), permitting such testimony to be admitted if constitutionally required.

■ In *Lopez v. State*, 18 S.W.3d 220, 222–23 (Tex.Crim.App.2000), the Court reiterated a previous holding that the Confrontation Clause of the Sixth Amendment will prevail if there is a conflict between it and the Rules of Evidence. Therefore, we turn to appellant's position that the trial court's ruling denied him his constitutional right of confrontation. The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. U.S. CONST. amend. VI; *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347, 353 (1974). "Confrontation means more than being allowed to confront the witness

physically." *Davis*, 415 U.S. at 315, 94 S.Ct. 1105. Indeed, " '[t]he main and essential purpose of confrontation is to *secure for the opponent the opportunity of cross-examination.* '" *Id.* at 315–16, 94 S.Ct. 1105 (quoting 5 JOHN HENRY WIGMORE, EVIDENCE, § 1395, at 123 (3d ed.1940)) (emphasis in original).

■ "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis*, 415 U.S. at 316, 94 S.Ct. 1105. Subject always to the broad discretion of the trial court to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. *Id.* The Court in *Davis* noted two ways a cross-examiner may use to impeach a witness—a "general" attack and a "particular" attack. *Id.* The example given by the Court of a "general" attack on credibility is where the cross-examiner introduces evidence of the witness's having committed a prior crime. *Id.* The example of a more "particular" attack on credibility occurs when the cross-examiner directs the inquiry toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at trial. *Id.* It is with this latter, "particular" type of attack-evidence that the Supreme Court, as well as most other reviewing courts, have provided appellate direction. A witness's biases, prejudices, or ulterior motives are " 'always relevant as discrediting the witness and affecting the weight of his testimony.' " *Id.* (quoting 3A JOHN HENRY WIGMORE, EVIDENCE, § 940, at 775 (Chadbourn rev.1970)). A defendant in a criminal case states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby " 'to expose to the jury the facts from which jurors … could appropriately draw inferences relating to the reliability of the witness.' " *Olden v. Kentucky*, 488 U.S. 227, 231, 109 S.Ct. 480, 102 L.Ed.2d 513, 519 (1988) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (quoting *Davis*, 415 U.S. at 318, 94 S.Ct. 1105)).

In the instant case, the testimony from the sealed hearing amounts to a "general" attack on S.E.'s credibility. In explaining the inconsistency between S.E.'s first statement denying any prior sexual abuse and her later statement claiming prior sexual abuse, S.E. stated that she was afraid and wanted to keep the family together. With regard to the allegation of sexual abuse by the older stepbrother, "proof" of its falsity is certainly not present in the record to the extent it was in both cases relied upon by appellant. *See Polvado v. State*, 689 S.W.2d 945, 948–49 (Tex.App.-Houston [14th Dist.] 1985, pet. ref'd) (audio tapes in which child-victims recanted previous sexual assault accusation against appellant erroneously suppressed on issue of whether victims were coerced into recanting); *Thomas v. State*, 669 S.W.2d 420, 422 (Tex.App.-Houston [1st Dist.] 1984, pet. ref'd) (child victim admitted on cross-examination that prior claim of rape by a "tall and skinny, bushy hair" man was false). By contrast, S.E. affirmed the fact that her prior accusation against her older stepbrother of sexual abuse was true. The only evidence of falsity regarding S.E.'s accusation against the stepbrother comes from his denials.

Under the standards announced in *Davis*, and reaffirmed in both *Delaware v. Van Arsdall*, and *Olden v. Kentucky*, we find appellant failed to show his rights

under the Confrontation Clause were violated as the testimony he sought to elicit from the various witnesses contained in the sealed reporter's record did not reflect a bias, prejudice, or ulterior motive, "prototypical" or otherwise, on the part of S.E. so as to infer that S.E.'s trial testimony was anything other than reliable. We further agree with the portion of Justice Stewart's concurring opinion in *Davis* in which he notes that "the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the **general** credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions." *Davis,* 415 U.S. at 321, 94 S.Ct. 1105 (emphasis added). Additionally, in the instant case, the trial court could have reasonably concluded that the **general** attack on S.E.'s credibility, without more, was unfairly prejudicial, and outweighed any probative value. We therefore overrule sealed issue five. The judgment and the sentence of the trial court are affirmed.

AFFIRMED.

## CONCURRING OPINION

DAVID B. GAULTNEY, Justice.

I concur. I disagree on one point. In addressing issue two, the majority notes they "must admit to some confusion in the state of the law." I see no confusion. While an expert witness may base her opinion on hearsay evidence reasonably relied on by experts in her field, she may also be cross-examined concerning the same type of evidence when she chooses to ignore it. Otherwise, the expert witness could elect to consider only the evidence she wants the jury to hear and ignore any evidence that conflicts with her opinion, even though it is the type of evidence reasonably relied on by experts in her field and it is evidence which would affect her

opinion. *See* TEX.R. EVID. 703, 705. I therefore do not agree with the majority's conclusion that the Court of Criminal Appeals departed in this case from established evidentiary law in its analysis of the permissible scope of cross-examination of expert witnesses. *See Wheeler v. State,* 67 S.W.3d 879, 883–86 (Tex.Crim.App.2002).