

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-16-00246-CR
No. 07-16-00247-CR
No. 07-16-00248-CR
No. 07-16-00249-CR
No. 07-16-00250-CR

_____

ALLEN ODONALD NASH, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 9th District Court; Montgomery County, Texas
Trial Court No. 14-12-13270-CR (Counts I, II, III, IV, & V);
Honorable Suzanne Stovall, Presiding

November 16, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Following pleas of not guilty, Appellant, Allen ODonald Nash, was convicted by a jury of five sexually-related offenses proscribed by the Texas Penal Code.[1]   The

---

[1] TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (West Supp. 2018).  An offense under this section is a first degree felony.

convictions were enhanced by two prior felonies.[2]  As depicted below, the jury assessed

life sentences for each offense and the trial court entered five separate judgments.

| Count I | Agg. Sexual Assault | § 22.021(a)(1)(B)<br><br>(digital penetration of the sexual organ of Z.B., a child younger than 14 years of age, on October 29, 2009) | Confinement for life |
|---|---|---|---|
| Count II | Agg. Sexual Assault | § 22.021(a)(1)(B)<br><br>(digital penetration of the sexual organ of Z.B., a child younger than 14 years of age, on November 5, 2009) | Confinement for life |
| Count III | Agg. Sexual Assault | § 22.021(a)(1)(B)<br><br>(penetration of the mouth of Z.B., a child younger than 14 years of age, by Appellant inserting his sexual organ on November 5, 2009) | Confinement for life |
| Count IV | Agg. Sexual Assault | § 22.021(a)(1)(B)<br><br>(digital penetration of the sexual organ of Z.B., a child younger than 14 years of age, on November 12, 2009) | Confinement for life |
| Count V | Agg. Sexual Assault | § 22.021(a)(1)(B)<br><br>(penetration of the mouth of Z.B., a child younger than 14 years of age, by Appellant inserting his sexual organ on November 12, 2009) | Confinement for life |

Appellant's sentences were ordered to run concurrently.  Appellant gave timely notice of

appeal.[3]  By a sole issue, he contends the trial court abused its discretion in allowing Myra

---

[2] TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2018).  As enhanced, each offense was punishable by imprisonment for life, or for any term of not more than 99 years or less than 25 years.

[3] Originally appealed to the Ninth Court of Appeals, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001 (West 2013).  Should a conflict exist between precedent of the Ninth Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court.  TEX. R. APP. P. 41.3.

Domingue, the forensic interviewer and an outcry witness, to testify about sexual conduct testified to by the complainant's mother, another outcry witness. We affirm.

BACKGROUND

Lisa Nash, a single parent of two children, married Appellant in 2005 while they were living in Seattle, Washington.[4] Her daughter, Z.B., was approximately six years old at the time. In August 2008, all parties moved to Texas where they resided with Mrs. Nash's parents until May 2009, when they found a home of their own.

When Z.B. was nine years old, the mother awoke one night to find that Appellant had moved Z.B. from her bedroom and brought her into their bed. Appellant told Mrs. Nash that Z.B. had complained of a stomach ache. Around the time of the stomach ache incident, Z.B. told her mother that Appellant had been coming into her room and rubbing her stomach which made her feel uncomfortable. Mrs. Nash confronted Appellant and his explanation was that Z.B. was having stomach aches.

Of his own volition, Appellant moved out of the home that night. Months later, he moved back in with Z.B. and her mother. He was sleeping in the guest bedroom, which was located across from Z.B.'s bedroom. Some months later, Mrs. Nash and Appellant permanently separated for reasons unrelated to the charges pending against him.

Several years later, in 2013, Mrs. Nash and Z.B. had a disagreement and Mrs. Nash took Z.B.'s cell phone away as punishment. According to Mrs. Nash, the argument

---

[4] According to Mrs. Nash, when she later sought a divorce, she found out her marriage was not legally binding.

escalated into a physical confrontation that resulted in an injury to Z.B.'s arm. The next day at school, Z.B.'s coach sent her to the school nurse to ice her arm. The nurse contacted Child Protective Services about possible physical abuse by Mrs. Nash against Z.B.

Child Protective Services opened an investigation of the incident.[5] As part of that investigation, the caseworker held a family meeting with Z.B., Mrs. Nash, Mrs. Nash's sister, and Z.B.'s maternal grandparents, who were her caregivers while her mother was at work. The meeting was held at the home of the grandparents. During the meeting, the discussion shifted from the incident between Mrs. Nash and her daughter to allegations of sexual abuse by Appellant against Z.B.[6] At that point in the discussion, Z.B. became very upset and tried to leave the meeting. Mrs. Nash's sister convinced her to stay.

After the meeting, while Z.B. and her mother were driving home, Mrs. Nash was very upset and apologized to Z.B. for not protecting her. She began asking Z.B. specific questions about the allegations against Appellant. The discussion continued after they arrived home and it was then that Z.B. revealed Appellant had sexually assaulted her on several occasions. The next day, Mrs. Nash notified the police.

Mrs. Nash gave the responding officer a voluntary statement in which she declared that Z.B. told her Appellant had penetrated Z.B.'s vagina with his finger and had also put her mouth on his penis. Z.B. was later questioned by Myra Domingue, a forensic

---

[5] Mrs. Nash was eventually cleared of any abuse allegations.

[6] Apparently, the case worker had become aware of allegations of sexual assault made by Z.B. against Appellant.

4

interviewer, who learned that Appellant had also touched Z.B.'s breasts during one of the sexual assault encounters.

Z.B. was taken to the emergency room for a medical examination. However, due to the length of time between the alleged assaults and Z.B.'s outcry, no visible injuries were detected, and no biological evidence was collected.

Based on Z.B.'s accusations, Appellant was indicted on five counts of aggravated sexual assault and one count of indecency with a child. During trial, a hearing was held outside the jury's presence for the trial court to determine the proper outcry witnesses for Z.B.'s accusations. The trial court ruled that Mrs. Nash was the proper outcry witness for the five counts of aggravated sexual assault and that Domingue was the proper outcry witness for the breast-touching incident.

In the jury's presence, during Domingue's testimony, in addition to testifying that Appellant rubbed and pulled Z.B.'s breasts, she also testified that Appellant "was using his fingers on [Z.B.'s] lower part." Defense counsel objected that Domingue's testimony on digital penetration was inadmissible hearsay as she was not the proper outcry witness for the sexual assault allegations. Initially, the trial court sustained the objection but then immediately announced, "I'm sorry. I'm overruling. I remember now."

After the case was presented, the jury acquitted Appellant of indecency with a child but convicted him of five counts of aggravated sexual assault. By his sole issue on appeal, he maintains the trial court abused its discretion in allowing Domingue, who was designated as the outcry witness only for the breast-touching incident, to testify regarding digital penetration of Z.B., an act first described to Mrs. Nash, who was the designated

5

outcry witness on all charges of digital penetration. Appellant argues the trial court's error caused him harm.

In its brief, the State tacitly concedes that under article 38.072 of the Texas Code of Criminal Procedure, the trial court may have erred in admitting that testimony. However, the State contends the improper admission of that testimony was harmless. We agree with the State.

APPLICABLE LAW

Hearsay is inadmissible at trial except as provided by statute or by the Texas Rules of Evidence. *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). When a defendant is charged with sexual offenses committed against a child under age fourteen, article 38.072 allows into evidence the complainant's out-of-court statement if that statement is a description of the offense and is offered into evidence by the first person eighteen years of age or older that the complainant told of the offense. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3) (West Supp. 2018). The victim's out-of-court statement is referred to as an "outcry" and the person the victim made the statement to is known as an "outcry witness." *Sanchez*, 354 S.W.3d at 484.

Hearsay testimony from more than one outcry witness may be admissible under article 38.072 only if the witnesses testify about different events. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011). There may be only one outcry witness per event. *Id.*

In the underlying case, the trial court abused its discretion in allowing Domingue to testify that Appellant had digitally penetrated the complainant simultaneously on the

6

occasion when he touched Z.B.'s breasts. Given that Appellant has preserved this error by objecting at trial, such error is reversible if this court determines that Appellant was harmed.

HARMLESS ERROR ANALYSIS

The erroneous admission of hearsay testimony under article 38.072 is non-constitutional error. *See Wheeler v. State*, 79 S.W.3d 78, 84 (Tex. App.—Beaumont 2002, no pet.). *See also* TEX. R. APP. P. 44.2(b) (directing that an error that does not affect substantial rights must be disregarded). A defendant's substantial rights are affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Such an error is harmless if this court is reasonably assured that the error did not influence the verdict or had but a slight effect. *Id.* Where the same or similar evidence is admitted without objection at another point in the trial, the error is harmless. *See Lane v. State*, 151 S.W.3d 188, 192-93 (Tex. Crim. App. 2004); *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991). *See also Rancher v. State*, Nos. 09-13-00355-CR, 09-13-00356-CR, 2015 Tex. App. LEXIS 739, at *14-15 (Tex. App.—Beaumont Jan. 28, 2015, pet. ref'd) (mem. op.) (holding that admission of testimony was harmless as cumulative of other evidence admitted without objection).

ANALYSIS

Appellant's counsel vehemently objected to Domingue's testimony regarding digital penetration as being inadmissible hearsay. However, testimony of digital penetration was offered without objection in several instances. First, Mrs. Nash, who had been designated as the proper outcry witness for the instances of digital penetration,

testified to Appellant's conduct as reported by Z.B. Z.B. also testified that Appellant had penetrated her vagina with his fingers on several occasions. Finally, during the investigating detective's cross-examination, State's Exhibit Number 6 was admitted without objection. That exhibit is Mrs. Nash's voluntary statement in which she recited that Z.B. told her Appellant "had fingered her vagina and made her put her mouth on his penis." Z.B.'s out-of-court statements, which were admitted into evidence without objection, were cumulative of Domingue's objected-to-testimony. Therefore, we disregard the erroneous admission of Domingue's testimony as harmless. Appellant's sole issue is overruled.

CONCLUSION

The trial court's judgments are affirmed.


Patrick A. Pirtle
Justice

Do not publish.